UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HANK CHARLES BABCOCK,

                            Plaintiff                    DECISION AND ORDER

-vs-

                                                        17-CV-6484 CJS

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES

For the Plaintiff:                Kenneth R. Hiller
                                          Mary Ellen Gill
                                          Law Offices of Kenneth Hiller
                                          6000 North Bailey Avenue, Suite 1A
                                          Amherst, New York 14226

For the Defendant:              Kathryn S. Pollack
                                          Social Security Administration
                                          Office of General Counsel
                                          26 Federal Plaza, Room 3904
                                          New York, New York 10278

                                          Kathryn L. Smith, A.U.S.A.
                                          Office of the United States Attorney
                                          for the Western District of New York
                                          100 State Street
                                          Rochester, New York 14614

INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying the application of Hank Charles Babcock ("Plaintiff") for Social Security Disability Benefits ("SSDI") and Supplemental Security Income Benefits ("SSI"). Now

before the Court is Plaintiff's motion for judgment on the pleadings (Docket No. [#10]) and Defendant's cross-motion [#14] for the same relief. Plaintiff's motion is granted, Defendant's cross-motion is denied, and this matter is remanded for further administrative proceedings.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. Briefly, Plaintiff claims to be disabled due to a variety of ailments, including anxiety, depression and sleep apnea, for which he has received treatment, including medication, "therapy, and periodic psychiatric treatment."

Plaintiff claims to have become disabled on February 1, 2012. On March 17, 2016, after Plaintiff's application for benefits was denied initially, a hearing was held before an Administrative Law Judge ("ALJ") by videoconference, with the ALJ located in Baltimore and Plaintiff and his mother located in Rochester. Plaintiff proceeded *pro se* at the hearing, accompanied by his mother. Plaintiff indicated that he had been receiving mental health therapy at the Evelyn Brandon Health Center ("Evelyn Brandon") on a bi-weekly basis, approximately, since 2013,[1] and that he was taking the maximum dosage of Sertraline (Zoloft) per day for depression and/or anxiety.[2] Plaintiff stated, though, that he still felt the need to smoke marijuana to feel better.

Plaintiff also indicated that he received treatment for sleep apnea from "Unity at Park Ridge."[3] With regard to the sleep apnea, Plaintiff indicated that he slept "really

---

[1] T. 39.
[2] T. 41.
[3] T. 42.

bad"; that a sleep study had determined that he woke eleven times per hour during the night due to such condition; and that while he had been prescribed a CPAP machine, he had been thus far unable to use it consistently because it restricted his movement and made him feel that he was suffocating.[4]

Plaintiff further stated that he went to his primary care physician, Michael Foote, M.D. ("Foot"), infrequently, on an "as needed" basis.[5]

Plaintiff told the ALJ that it was very difficult for him to speak openly about his mental health concerns, and his hesitancy in that regard is mentioned frequently in the treatment notes from Evelyn Brandon.[6] Plaintiff therefore asked whether the ALJ could just consult the treatment notes from Evelyn Brandon, rather than asking him to explain his condition. Plaintiff stated, in that regard, that he assumed the ALJ had all of his medical records, since he had given an authorization for such records to the Social Security Administration.[7] However, the ALJ indicated that Plaintiff's treatment providers had not fully complied with the Social Security Administration's request for records.[8] For example, the ALJ told Plaintiff that he had not received *any* treatment notes, from any treating sources, for "2015 or 2016."[9] The ALJ instructed Plaintiff to obtain the missing treatment records and submit them to the Social Security Administration, and indicated that he would leave the hearing record open for one week

---

[4] T. 41-42, 43.
[5] T. 42.
[6] T. 44, 312. The records allude to abuse that Plaintiff suffered as a child, about which he is not comfortable speaking.
[7] T. 44-46.
[8] T. 45-46.
[9] T. 45.

3

in order to allow Plaintiff to comply with that direction.[10]

In particular, the ALJ emphasized that he was interested in the treatment notes from Evelyn Brandon, to which he referred as "Unity":[11]

> So what I want to do is I want to leave the record open and give you some time to go get that information from the doctor directly, or from whoever you're seeing, *in this case the Unity Mental*, [sic] and secure that, and submit it to the Social Security Administration.

T. 45 (emphasis added); *see also*, T. 46 ("And so we don't have anything from *Unity* so far. So I'm sure if you go to *Unity*, you being the patient, they will provide you copies of their treatment notes, and then you can go ahead and submit them to me.") (emphasis added). The ALJ also indicated that Plaintiff could submit records from other medical providers, but it appears that Plaintiff understood, at least initially, that the ALJ was indicating that it was Evelyn Brandon, in particular, that had failed to provide requested records. In that regard, the following exchange took place between the ALJ, Plaintiff, and his mother:

> ALJ: Then it's up to you, the claimant, to supplement the record as appropriate with medical information. In this case we don't have anything for the last 18 months.
>
> Plaintiff's Mother: [To Plaintiff] How is that possible? You go every week to the doctors.[12]
>
> Plaintiff: He [the ALJ] said that they don't give them any information. So is it

---

[10] T. 45-48, 54. The ALJ incorrectly implied that he had no responsibility to obtain missing medical records. *See*, T. 45 ("A. Why would you not have that information? Q. "Sir, the – it is your responsibility to submit the information, not the other way around[.]")

[11] Plaintiff interchangeably referred to Evelyn Brandon as Unity Mental Health, *see, e.g.*, T. 39 ("I believe it's Unity Mental Health, Unity at Evelyn Brandon Mental Health.").

[12] Plaintiff's mother was evidently referring to Evelyn Brandon, since that is the only medical provider to whom Plaintiff went with any degree of frequency.

4

>the *Evelyn Brandon* place only works with their clients [to provide medical records], or something? I mean –
>
>ALJ: No, they gave us information up to July – up to July of 2014.
>
>Plaintiff: So basically I'm going to have to leave here and go to *them* to give me the paperwork, their notes, of up to today then, right, and then mail them to you?
>
>ALJ: Yes, to *them, and to any other place that you have visited within the last year and a half, two years*, to update the records as to how you are doing both physically and emotionally for the last couple of years, yes, sir.

T. 46-47 (emphasis added).

The ALJ did not discuss the concept of opinion evidence with Plaintiff, nor did he suggest that Plaintiff obtain such evidence from his treating sources. To the contrary, the ALJ suggested that he was most interested in seeing notes from office visits. In that regard, following the aforementioned discussion at the hearing concerning the missing medical records, Plaintiff indicated that he had copies of reports, prepared by this therapist for "DSS," describing his "medications" and "disorders."[13] Plaintiff did not expressly state that such forms also contained opinions concerning his ability to maintain employment, but such DSS forms typically contain that information, in the Court's experience. The ALJ responded, "You may want to submit that as well, sir. . . . [B]*ut that is not what I'm looking for.*"[14] Instead, the ALJ emphasized that he was interested in seeing the "treatment notes" for 2015 and 2016, and on this point he stated: "Mr. Babcock, what I need are the treatment notes, the treatment notes."[15]

---

[13] T. 48.
[14] T. 47-48.
[15] T. 47.

5

Subsequently, it appears that Plaintiff obtained 128 pages of additional office notes from Evelyn Brandon, pertaining to mental health treatment sessions between September, 2014, and February, 2016, which he submitted to the ALJ, *see*, Exhibit 4F. However, Plaintiff did not submit any additional medical records pertaining to 2015 or 2016 from other doctors, such as records pertaining to his treatment for sleep apnea, nor did he submit the aforementioned forms provided to DSS by his mental health therapists.

On March 30, 2016, the ALJ issued a Decision finding that Plaintiff is not disabled and therefore not entitled to SSDI or SSI benefits.[16] In the decision, the ALJ found that Plaintiff's sleep apnea was a severe impairment, but that the record was essentially devoid of any documentation concerning the effects of that condition on Plaintiff's ability work. *See*, T. 24 ("[T]he record indicates that the claimant's sleep apnea does affect his ability to sleep. However, the record includes virtually no medical treatment evidence concerning this condition."). The ALJ also purported to summarize the office notes from Evelyn Brandon by stating that while Plaintiff had "complained of" problems like "insomnia, anxiety, social anxiety, obsessive tendencies,

---

[16] T. 18-29. "A five-step sequential analysis is used to evaluate disability claims. See 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in ... the regulations.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five." *Colvin v. Berryhill*, No. 17-1438-CV, 734 Fed. Appx. 756, 758, 2018 WL 2277791, at *1 (2d Cir. May 18, 2018) (citations and internal quotation marks omitted).

depression, poor appetite, passive suicidal ideation, and poor focus," and had been classified as "a moderate long-term risk for suicide and violence," the records "noted significant positive traits, including no apparent cognitive deficits, good insight, fair to good judgment, appropriate appearance, appropriate behavior, normal speech, logical and coherent thinking; normal perceptions, and normal orientation."[17] The only opinion evidence referenced by the ALJ was the report of the consultative psychologist, Adam Brownfeld, Ph.D. ("Brownfeld"), who examined Plaintiff at the Commissioner's request.

On July 24, 2017, Plaintiff commenced this action. Plaintiff is now proceeding with an attorney. On February 28, 2018, Plaintiff filed the subject motion [#10] for judgment on the pleadings. Plaintiff's motion does not directly take issue with the ALJ's written decision, but instead, contends that the ALJ failed to develop the record, in two ways: First, by failing to request opinion evidence from Plaintiff's doctors or to inform the *pro se* Plaintiff that he could submit such evidence; and, second, by failing to obtain all of Plaintiff's mental health treatment records from Evelyn Brandon. In other words, Plaintiff maintains that he did not receive a fair hearing. Plaintiff argues that the Court must therefore reverse the Commissioner's final determination and remand this matter for a new hearing. Defendant opposes that request and maintains that the Court should affirm the Commissioner's determination.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence,

---

[17] T. 25.

shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

However, a "threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). "Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Rivera v. Berryhill*, No. 17-CV-991 (JLC), 2018 WL 4328203, at *9 (S.D.N.Y. Sept. 11, 2018) (citation and internal quotation marks omitted).

<u>The ALJ's Duty to Develop the Record in General</u>

It is well settled that because SSDI and SSI actions are essentially non-adversarial in nature, the ALJ has a duty to develop the record where there are obvious gaps, and that such duty is heightened when the claimant is proceeding *pro se*:

> [W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999) (internal alterations and quotation marks omitted). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Where, as here, the claimant proceeds *pro se*, "the ALJ's duties are heightened." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation marks omitted). "The ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the

8

relevant facts are sufficiently developed and considered and by scrupulously and consciously probing into, inquiring of, and exploring for all the relevant facts." *Id.* (internal quotation marks and brackets omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted). An ALJ's failure to develop the record warrants remand. See *id.* at 79–80.

*Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. Sep. 27, 2017).

More specifically, the Commissioner's regulations indicate that ALJs are required to "make every reasonable effort" to help claimants get medical evidence from their treating sources. *See*, 20 C.F.R. § § 404.912(b)(1) & 416.912(b)(1). On this point, the regulations define "every reasonable effort" as follows:

> Every reasonable effort means that we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination.

20 C.F.R. § § 404.912(b)(1)(i) & 416.912(b)(1)(i).

<u>The ALJ's Alleged Failure to Obtain Office Notes</u>

As discussed earlier, at the close of the hearing the ALJ left the record open and directed Plaintiff to obtain medical records from 2015 and 2016. Plaintiff subsequently obtained and submitted 128 additional pages of office notes from Evelyn Brandon, which the ALJ considered when making his ruling.[18]

Nevertheless, Plaintiff contends that there were still gaps in the Evelyn Brandon

---

[18] T. 18.

9

records, which should have caused the ALJ to make additional efforts to develop the record. In particular, Plaintiff asserts:

> The administrative transcript does not contain Plaintiff's full record of treatment from Evelyn Brandon. After Dr. McIntyre's initial October 1, 2013, evaluation, there are two treatment notes from June 5 and July 22, 2014; and treatment notes from regular visits from September 11, 2014 through February 1, 2016. Thus, the record is missing treatment notes from October 1, 2013 through June 5, 2014, and from July 22 through September 11, 2014, as well as possibly records from between June 5 and July 22, 2014. It is apparent that these records actually exist, as Plaintiff informed Dr. Foote on December 2013 [sic] that he was treating once a week at Evelyn Brandon with a counselor; all of the treatment notes from Evelyn Brandon indicate that Plaintiff's treatment was regular and frequent; and Plaintiff informed the ALJ at the hearing that he had treated at Evelyn Brandon for approximately three years at intervals of approximately every two weeks.

Pl. Memo of Law [#10-1] at pp. 3-4. Plaintiff also contends that the ALJ improperly shifted his duty to develop the record onto him. Consequently, Plaintiff contends that remand is required for further development of the record.

Defendant insists, though, that the ALJ adequately performed his duty to develop the record. Defendant contends, for example, that it was not improper for the ALJ to direct Plaintiff to obtain the missing records, and that any error in that regard was harmless because Plaintiff succeeded in obtaining and submitting the records. Defendant also contends that insofar as there actually are additional notes which Evelyn Brandon failed to produce, such fact would not be the ALJ's fault, since HIPAA enables mental health treatment providers to decline to produce psychotherapy notes, even when requested by the patient.[19] Alternatively, Defendant counters that "[t]here was no

---

[19] Def. Memo of Law [#14-1] at p. 15, n. 4. Defendant apparently has no reason to think that was the

10

reason for the [ALJ] to suspect that [Evelyn Brandon's] response was incomplete, nor has Plaintiff provided any evidence that additional records exist."[20] Further, Defendant maintains that Plaintiff has not shown that "such [missing] records, if they exist, would add anything to the record."[21]

The Court finds that Plaintiff's argument on this point lacks merit, at least with regard to the allegedly-missing Evelyn Brandon records. Initially, the Court agrees with Defendant that insofar as the ALJ erred by putting the onus on a *pro se* claimant with mental impairments to obtain two years' worth of medical records and submit them within seven days, such error was rendered harmless because Plaintiff was successful in meeting the ALJ's deadline.[22] That is, Plaintiff was successful in obtaining records from Evelyn Brandon; he did not obtain records from *other providers*, which is a point the Court will address further below. However, Plaintiff's argument is directed solely at the Evelyn Brandon records, and with regard to them, any error in making Plaintiff obtain the records was harmless.

Turning to Plaintiff's contention that the ALJ should have realized that there were still gaps in the Evelyn Brandon records, the Court disagrees. At the outset, the Court finds it significant that when Plaintiff obtained and submitted the additional records to the ALJ, he gave no indication that there were gaps in the records. This is significant

---

actual reason for the alleged failure to produce some of the records.
[20] Def. Memo of Law [#14-1] at p. 20.
[21] Def. Memo of Law [#14-1] at p. 20.
[22] Because of this, the Court need not actually decide whether the ALJ erred in this regard. Nevertheless, the Court is bothered both by the fact that the ALJ clearly gave the Plaintiff the incorrect impression that it was entirely the Plaintiff's obligation to develop the record, and the fact that he only left the record open for seven days.

because Plaintiff, who is in a better position than anyone else to know whether the Evelyn Brandon records are complete, was aware that the ALJ wanted *all* of the relevant office notes. Accordingly, since Plaintiff obtained 128 additional pages of notes and submitted them to the ALJ without any further comment, it can be presumed that he felt the records were complete, notwithstanding his testimony that he typically saw his therapists on a regular basis.[23]

Moreover, the fact that Plaintiff testified generally that he saw his therapists on a weekly- or bi-weekly basis between 2013-2016 does not mean that there were not occasions during that period when appointments were either missed or scheduled farther apart. For example, an office note dated April 3, 2014, states: "He goes to counseling *about* every other week."[24] Also, an office note on June 10, 2015, by Plaintiff's regular therapist indicated that his next session would be with a new therapist, since the regular therapist was going on maternity leave;[25] however, the session with the new therapist did not occur until August 3, 2015.[26] Accordingly, the suggestion that Plaintiff met with his therapists like clockwork every two weeks is not accurate.

Further, even assuming *arguendo* that there are some gaps in the Evelyn Brandon records, for the reasons already discussed Plaintiff has not shown that the gaps are so obvious (based on Plaintiff's testimony concerning the frequency of his therapy sessions) that the ALJ should have recognized them and attempted to develop

---

[23] Nor does it seem likely that Evelyn Brandon, upon being asked by Plaintiff to provide him with all of his treatment notes, would only provide him some of those records without indicating that fact, or explaining why the missing records were not being produced.
[24] T. 247 (emphasis added)
[25] T. 320.
[26] T. 316.

the record further. *See, Bushey v. Colvin*, 607 F. App'x 114, 116 (2d Cir. 2015) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999) for the proposition that an "ALJ is under no obligation to seek additional information unless there are obvious gaps in the administrative record").  Nor do the Evelyn Brandon records themselves appear to be incomplete, such that by looking at them the ALJ should have realized a need for further development of the record.  In that regard, the Court has carefully reviewed the records, and finds no references to specific sessions or visits that are otherwise undocumented.[27]

Further, Plaintiff has not shown that the allegedly-missing Evelyn Brandon office notes actually exist, or that they are likely to contain significant new information. Indeed, Plaintiff's condition seems to have remained stable throughout the relevant period, and the office notes in the record generally repeat the same observations over and over again, making it likely that any missing records would be merely cumulative. *See, Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) ("[T]he potentially missing records here would consist of routine check-up and progress notes, with no indication that they contain significant information. It is not even clear that any records are actually missing.').  Additionally, the Court presumes that if such office notes existed, Plaintiff's counsel would have obtained them by now, and would have informed the Court as to what information is contained therein.

For all of the foregoing reasons, Plaintiff has not shown that remand is required due to a failure by the ALJ to develop the record with regard to office notes from Evelyn

---

[27] The records generally contain references to the treatment plan requiring that Plaintiff attend therapy every two weeks, but as already discussed that did not always occur.

Brandon.

However, the Court reaches a different conclusion with regard to the ALJ's failure to develop the record with evidence concerning Plaintiff's sleep apnea condition.[28] In that regard, Plaintiff testified that he had been diagnosed with sleep apnea after a sleep study indicated that he awoke eleven times per hour during the night. Plaintiff also indicated that the condition was essentially going untreated, since he had been unable to use the CPAP machine. The ALJ was aware at the hearing that he had no medical records concerning that condition, and he commented on the fact in his Decision. *See*, T. 24-25 ("[T]he record indicates that the claimant's sleep apnea does affect his ability to sleep. However, the record includes virtually no medical treatment regarding this condition."). Moreover, the ALJ apparently made no effort to develop the record as to this condition, other than his above-referenced direction to Plaintiff to obtain all of his medical records for 2015 and 2016. Plaintiff, though, failed to submit any records concerning his sleep apnea condition, possibly because he understood that the ALJ was only interested in the records from Evelyn Brandon.[29] Therefore, the Court's discussion of harmless error above does not apply to the sleep apnea records. In sum, Court finds that there was an obvious gap in the record concerning Plaintiff's sleep apnea, which the ALJ failed to develop, and that such failure was not necessarily harmless. Accordingly, remand is appropriate.

<u>The ALJ's Alleged Failure to Obtain Opinion Evidence</u>

---

[28] T. 20. The Court is raising this issue *sua sponte*, as Plaintiff's submissions focus on the Evelyn Brandon records. However, Defendant is not prejudiced, since the Court would be remanding the matter in any event for reasons to be discussed below.
[29] T. 46-47

Plaintiff also contends that he was denied a fair hearing, because the ALJ failed to advise him of the importance of obtaining opinion evidence from his treating doctors. Indeed, in his initial memorandum of law, Plaintiff contended that the ALJ actually told him not to submit such opinion evidence: "Astoundingly, the ALJ actually *affirmatively advised* Plaintiff that he should *not* submit *anything other than treatment notes*[.]" Pl. Memo of Law [#10-1] at p. 13 (emphasis in original); *see also, id.* at p. 14 ("[T]he ALJ explicitly advised him *not to submit it.*") (emphasis in original); *id.* at p. 15 ("[T]he ALJ in this case went far beyond merely failing to advise Plaintiff of the importance of treating physicians' assessments: he affirmatively informed Plaintiff that Plaintiff should not submit them."). In his reply brief, Plaintiff toned down his rhetoric on this point slightly, by asserting that the ALJ only "*effectively advised* Plaintiff not to submit treating source opinions." Pl. Reply [#15] at p. 1 (emphasis added); *see also, id.* at pp. 2, 3 ("effectively advised").

As an initial matter, the Court rejects Plaintiff's contention that the ALJ told him not to submit opinion evidence from his treating sources. Actually, the ALJ told Plaintiff at least twice that he could submit such evidence. *See*, T. 47 ("You may want to submit that as well, Sir."); *see also*, T. 48 ("You have to submit that."). Plaintiff has a valid point, however, in asserting that the ALJ gave the impression that he wanted the treatment notes, and not the opinion statements that Plaintiff had in his possession. After reviewing the transcript a few times, however, the Court is convinced that any impression which the ALJ gave in that regard was inadvertent. In the Court's view, what happened was that the ALJ was explaining to Plaintiff that he had not received any

15

medical records for 2015 or 2016, and that Plaintiff needed to get those records. In the middle of that discussion, Plaintiff pointed out that he had copies of various treating source statements which his therapist had given to DSS. The ALJ responded by telling Plaintiff that he could submit those. However, the ALJ's focus was not on those documents, which Plaintiff already had and could easily submit; rather, his focus was on the missing treatment records, which neither he nor Plaintiff had. Accordingly, when in response to Plaintiff's continued questions about the DSS statements the ALJ stated, "Right, but that is not what I'm looking for. What I'm looking for are the treatment notes," he was not telling Plaintiff not to submit the DSS reports. Rather, he was, it seems, directing Plaintiff's attention back to the complete lack of medical evidence for 2015 and 2016. Consequently, the Court rejects Plaintiff's contention that remand is required because the ALJ instructed Plaintiff not to submit opinion evidence from his treating sources.

Turning to the question of whether the ALJ had a duty to advise the *pro se* Plaintiff concerning his ability to obtain opinion evidence from his treating doctors, some courts in this Circuit have indicated that ALJ's do have such a duty. *See, e.g., Barrie on behalf of F.T. v. Berryhill*, No. 16CIV5150CSJCM, 2017 WL 2560013, at *11 (S.D.N.Y. June 12, 2017) ("On remand, the ALJ should also inform Plaintiff that she may seek opinions or testimony from F.T.'s treating physicians."); *see also, Jimenez v. Massanari*, No. 00 CIV. 8957 (AJP), 2001 WL 935521, at *11 (S.D.N.Y. Aug. 16, 2001) ("The ALJ did not have any of Jimenez's treating physician's opinions as to Jimenez's functional capacity. None of Jimenez's treating physicians gave opinions; the ALJ had nothing

16

more than a pile of records. The ALJ has a duty to aid the claimant in obtaining important evidence such as a treating physician's assessment of a claimant's functional capacity.") (collecting cases); *see also, id*. at *12 ("The ALJ had a duty to inform Jimenez that he could call, subpoena or request a clearer statement from his treating physicians.") (collecting cases).

Assuming *arguendo* that the ALJ had such a duty, he failed to discharge it, since he never advised Plaintiff that he should or even could submit opinions from his treating sources. But, more importantly, it seems that the ALJ actually may have discouraged Plaintiff from submitting such evidence, albeit inadvertently. Consequently, even assuming that the ALJ had no such duty to advise the claimant, the Court nevertheless finds that remand is necessary here.

In that regard, while the Court has already found that the ALJ did not actually tell Plaintiff not to submit opinion evidence from his treating sources, it nevertheless finds, for the reasons already discussed, that the ALJ at least made statements that reasonably would have confused the Plaintiff on that point, such that the Court cannot say that Plaintiff received a fair hearing. Indeed, at the hearing Plaintiff had the DSS reports (containing opinions about his mental health) in his hand, and wanted to submit them for consideration. However, after the ALJ told Plaintiff that he was not "interested" in them at that moment, Plaintiff apparently concluded that the ALJ was not interested in seeing them *at all*, since he never submitted them. Such a conclusion on Plaintiff's part is understandable and, indeed, reasonable, in light of the ALJ's arguably dismissive attitude toward the DSS reports, in contrast to his insistence upon seeing the

office notes. Therefore, since it appears that Plaintiff was misled by the ALJ's comments into thinking that opinion evidence from his treating sources was not important to the ALJ's decision, remand for further administrative proceedings is necessary to ensure that Plaintiff receives a fair hearing.

CONCLUSION

Plaintiff's motion for judgment on the pleadings [#10] is granted, and Defendant's cross-motion [#14] is denied. That matter is remanded to the Commissioner for further administrative proceedings. The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
     April 17, 2019

ENTER:

/s/ Charles J. Siraugsa
CHARLES J. SIRAGUSA
United States District Judge